```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS


HUMBERTO FEIJOO,                 )
          Plaintiff,             )
                                 )
     v.                          )     C.A. No.  13-11432-PBS
                                 )
DEPARTMENT OF CORRECTION, ET AL.,)
          Defendants.            )
```

MEMORANDUM AND ORDER

June 17, 2013

SARIS, C.D.J.

## I. Introduction

On June 6, 2013, plaintiff Humberto Feijoo ("Feijoo"), a prisoner at MCI Shirley serving a life sentence, filed a self-prepared complaint alleging, *inter alia*, violations of 42 U.S.C. § 1983 based on the Eighth Amendment, and violations of the Americans With Disabilities Act ("ADA").[1] Feijoo names as Defendants: (1) Luis Spencer ("Spencer"), Commissioner of the Massachusetts Department of Correction ("DOC"); (2) Kelley Ryan, Superintendent of MCI Shirley Medium ("Ryan"); (3) Karen DiNardo ("DiNardo"), the Deputy Superintendent of MCI Shirley Medium; and

---

[1] Feijoo is a frequent filer of civil actions in this Court. See Feijoo v. Massachusetts Department of Public Safety, et al., Civil Action No. 12-11453-GAO; Feijoo v. Massachusetts Department of Correction, et al., Civil Action No. 10-11951-DJC; Feijoo v. Massachusetts Department of Correction, et al., Civil Action No. 06-12226-GAO; Feijoo, et al. v. Commonwealth of Massachusetts, et al., Civil Action No. 97-10475-RGS; Langton, et al. v. Dubois, et al., Civil Action No. 92-40017-NMG. As noted, *infra*, *pro bono* counsel has been appointed for Feijoo in connection with three prior lawsuits.

(4) Dr. Maria Angelis ("Dr. Angelis"), the Medical Director for UMass Correctional Health Services.  In the caption of his Complaint, he names the DOC as a defendant as well; however, the body of the Complaint fails to set forth any allegations of direct liability of the DOC, and no specific request for relief is asserted against the DOC.

Feijoo alleges that since May 5, 2000, he has been housed at the MCI Shirley Infirmary (except for a short time when he was housed at Bridgewater State Hospital due to overcrowding at MCI Shirley).  He suffers from multiple sclerosis and is confined to a wheelchair or bed.  He has mobility only as a result of the acquisition of an electric wheelchair.  Feijoo alleges that the DOC has placed him in the Infirmary due to his need for a hoyer lift to get him in and out of bed for the toilet and shower chair.  He is on a regular diet, but suffers from diabetes and liver failure.  He undergoes kidney dialysis three times a week. He also suffers from anemia and receives blood transfusions as needed.

Feijoo's complaint challenges several conditions of confinement.  These include the inability to work in the prison,[2]

---

[2]     Feijoo alleges that he is being denied the privilege to work and earn good time credit because DiNardo claims that he is not medically cleared to work.  He contends this reasoning is belied by Dr. Angelis's claim that she never denied any request for Feijoo to be medically cleared.  Instead, she claims it would be good for Feijoo's mental state for him to be allowed to work. Further, he contends that DiNardo is not a trained medical person

denial of access to a satellite law library,[2] denial of access to weekly religious services and Bible study, denial of access to the fellowship of higher functioning inmates (because the other inmates in the Infirmary suffer from dementia or Altzheimers), and denial of special food items such as eclairs, peanut butter, jelly crackers, and cheese sticks, simply because he is housed in the Infirmary.  He contends the DOC has interposed the excuse that the items are not available because inmates are allergic to certain items or certain items are a choking hazard and unsafe.  Feijoo claims that such excuse is not legitimate.  He contends that as a result, the defendants refusal to make those food items available to him is discriminatory.  He further claims that he is in the Infirmary solely because of his disability and not as a result of segregation, yet he is denied access to all benefits enjoyed by prisoners housed in the general population, including: (1) visitation with family in a general area where food could be purchased from vending machines; (2) being isolated; and (3) being denied certain canteen items.  As an additional matter, Feijoo alleges the DOC, through its employees, have violated his

---

and had no right to review Feijoo's medical records.

   [2]   Feijoo complains that he is being denied access to a law library satellite computer since the installation was never completed in the Infirmary.  On several occasions, he asked DiNardo for permission to go to the ADL unit to use the satellite hook up there because the correctional officer would not allow him access without written permission.

right to medical treatment by interfering in the recommendations made by doctors who are contracted with the DOC.

Feijoo seeks an injunction enjoining the defendants from retaliating against him for filing this action, and from restricting him from any program or from obtaining special treats in the main chow hall.  He also seeks compensatory and punitive damages from each defendant.

Along with the Complaint, Feijoo filed a Motion for Leave to Proceed *in forma pauperis* (Docket No. 2), a Motion to Waive Cost of Service by Sheriff or Marshal (Docket No. 3), a Notice of Intent (Docket No. 4), and a Motion for Appointment of Counsel (Docket No. 6).

In the Notice of Intent, Feijoo claims that the defendants' refusal to modify their policies to accommodate an inmate house in the Infirmary merely because of his disabilities (such as making certain food items available) denies him privileges that are afforded to inmates in the general population.  Additionally, he alleges that he has been forced to accept medical treatment at the Lemuel Shattuck Hospital against his will.  He states he has no objection to treatment at another hospital, but has a suit against surgeons at this hospital.

## II.  Discussion

A.  <u>The Motion for Leave to Proceed *In Forma Pauperis*</u>

A review of Feijoo's financial disclosures and prison account statement reveals that he lacks sufficient funds to pay the filing fee for this civil action.  Accordingly, his Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) will be <u>ALLOWED</u>.

However, because Feijoo is a prisoner, he is obligated to make payments toward the $350.00 filing fee, pursuant to the Prison Litigation Reform Act.  <u>See</u> 28 U.S.C. § 1915 (the *in forma pauperis* statute).  Accordingly, it is hereby Ordered that:

1.  Feijoo is assessed an initial partial filing fee of <u>$56.59</u>, pursuant to 28 U.S.C. § 1915(b)(1)(B);[3]

2.  The remainder of the fee <u>$293.41</u> is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

This assessment is made apart from any other assessments

---

[3]  The initial partial assessment represents 20% of the average monthly balance in Feijoo's prison account for the six-month period preceding the filing of the complaint, as set forth in the prison account statement calculated by the Treasurer's Office at MCI Shirley.  This assessment is made without prejudice to Feijoo seeking reconsideration using some other certified account information data under the formula set forth in 28 U.S.C. § 1915(b).  Moreover, this assessment is made notwithstanding that Feijoo may not have sufficient funds in his account to pay the initial partial assessment.  Under the *in forma pauperis* statute, assessment is made at the time of filing of the complaint, but collection of the fee is made when funds exist.

made in other civil actions filed by Feijoo; however, for purposes of clarification for crediting any funds received from Feijoo, this Court intends that any funds received from his prison account first be applied to any prior Order of a Court assessing a filing fee pursuant to 28 U.S.C. § 1915.

B.   Screening of the Complaint

Because Feijoo is a prisoner, he is subject to the provisions of the Prison Litigation Reform Act ("PLRA"), Title VIII of Pub. L. 104-134, 110 Stat. 1321-1375 (1996).  The PLRA enacted several provisions which grant this Court the authority to screen and dismiss prisoner complaints.  See 28 U.S.C. § 1915 (proceedings *in forma pauperis)*; 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim upon which relief may be granted or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(ii) and (iii).  *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under § 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless.  Neitzke, 490 U.S. at 327-328;  Denton v. Hernandez,

504 U.S. 25, 32-33 (1992).

Section 1915A also authorizes the Court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A.

In connection with the preliminary screening, Feijoo's *pro se* complaint is construed generously.  Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000).  However, even under a broad reading, his claims are subject to dismissal in whole or part, for the reasons set forth below.

C.   Failure to Compy With Fed. R. Civ. P. 8

Rule 8 of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief ...."  Fed. R. Civ. P. 8(a)(2).  The statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Phelps v. Local 0222, No. 09-11218, 2010 WL 3342031, at

*5 (D. Mass. 2010) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (quotations and citations omitted)). In addition, the pleadings "must afford the defendants a meaningful opportunity to mount a defense." Diaz-Rivera v. Rivera-Rodriguez, 377 F.3d 119, 123 (1st Cir. 2004)(internal punctuation and additional citations omitted)). At a minimum, "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Id. (quotation omitted). While the "First Circuit holds a pro se litigant to a standard of pleading less stringent than that for lawyers," "this cannot be taken to mean that pro se complaints are held to no standard at all." Green v. Massachusetts, 108 F.R.D. 217, 218 (D. Mass. 1985). Thus, "the requirements of Rule 8(a)(2) are minimal – but minimal requirements are not tantamount to nonexistent requirements." Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004) (internal quotation omitted).

Further, under Rule 8, a plaintiff must plead more than a mere allegation that the defendant(s) has harmed him [or her]. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (detailed factual allegations are not required under Rule 8, but a complaint "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). See Chiang v. Skeirik, 582 F.3d 238, 244 (1st Cir. 2009) ("Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice.")(internal citation and quotation marks omitted).

Here, Feijoo's complaint materially fails to comply with Rule 8.  Apart from defendant DiNardo, Feijoo has not set forth plausible claims that are discernible.  His complaint is replete with a number of general grievances asserted against all of the defendants, but he does not state the "who, what, where, when" with respect to these claims.  While he submitted copies of grievances filed, this does not suffice to set forth his claims under Rule 8.  As an additional matter, he presents no claim against defendant Dr. Angelis for any direct actions or inactions taken by her.  He simply seeks to hold her liable as the Medical Director, but does not set forth any alleged wrongdoing by her.  Indeed, his complaint alleges that she actually supported his claim to be able to work by making a statement that she never denied any request for Feijoo to be medically cleared; instead, she claimed it would be good for Feijoo's mental state for him to be allowed to work.

Next, Feijoo's claim that he is being treated against his will at Lemuel Shattuck Hospital also does not set forth plausible Eighth Amendment claims under § 1983, as no factual underpinnings are included.  Courts consistently have refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's

medical treatment or to conclude that simple medical malpractice rises to the level of cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991)(same).  Only "deliberate indifference" to the serious medical needs of prisoners violates the Eighth Amendment.  Estelle, 429 U.S. at 106.  Deliberate indifference is "conduct that offends evolving standards of decency in a civilized society."  DesRosiers, 949 F.2d at 18 (citations omitted).  Here, Feijoo has failed to allege sufficiently facts demonstrating that any of the named defendants have been "deliberately indifferent"  to a serious medical need.  Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." Estelle, 429 U.S. at 104-05.  Apart from the bald assertion that the defendants refuse to permit him to dictate where he has medical treatment, as pled, his allegations have no constitutional implications.

     Finally, Feijoo's § 1983 claims against the DOC are based solely on the actions of employees, agents, or officials of the DOC and not on any direct action.  Similarly, his claims against Spencer, Ryan, and Dr. Angelis also appear to be based solely on their role as supervisory officials, and not on any direct action

10

or inaction taken by them.  As pled, Feijoo fails to state § 1983 claims against these defendants, because there is no *respondeat superior* liability under § 1983.  <u>Capozzi v. Department of Transp.</u>, 135 F. Supp. 2d 87, 98 (D. Mass. 2001) (citing <u>Ruiz Rivera v. Riley</u>, 209 F.3d 24 (1st Cir. 2000)).  "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983.  <u>Velez-Rivera v. Agosto-Alicea</u>, 437 F.3d 145, 156 (1st Cir. 2006) (quoting <u>Cepero-Rivera v. Fagundo</u>, 414 F.3d 124, 129 (1st Cir. 2005)).  "In § 1983 cases, 'supervisors are not automatically liable for the misconduct of those under their command.  A plaintiff must show an affirmative link between the subordinate [employee] and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization.'"  <u>Id.</u> (quoting <u>Carmona v. Toledo</u>, 215 F.3d 124, 132 (1st Cir. 2000)).  See <u>Pinto v. Nettleship</u>, 737 F.2d 130, 132 (1st Cir. 1984) (no *respondeat superior* liability under § 1983; liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights).

In sum, this action cannot proceed as pled because of the various legal impediments noted above.  In light of this, the Court considers whether appointment of *pro bono* counsel is

justified in this case.[4]

D.    The Motion for Appointment of Counsel

Under 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); however, a civil plaintiff lacks a constitutional right to free counsel. DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991).  In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that denial of counsel will result in fundamental unfairness impinging on the party's due process rights.  Id.  To determine whether exceptional circumstances sufficient to warrant the appointment of counsel are present in a case, the Court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent him or herself.  Id. at 24.

Here, the Court is cognizant that *pro bono* counsel has been appointed for Feijoo in connection with his past lawsuits.  In Civil Action No. 06-12226-GAO, Attorney Stanley D. Helinsky, Esq. was appointed.  That suit involved an ADA action where Feijoo asserted many of the claims raised in this action.  These

---

[4]    In light of the discussion herein, this Court need not address application of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) providing that  "no federal action may be brought by a prisoner .... for mental or emotional injury suffered while in custody, without a prior showing of physical injury."  Id.

included the inability to earn good time credit, the inability to participate in educational and work opportunities, the inability to attend church and religious programs, the inability to access the gym and recreation room; the inability to access the law library, the inability to socialize with other inmates as the general population does; and inability to access the visiting room.  His primary claim, however, was a challenge to the denial of the use of an electric power wheelchair, and an objection to the use of other inmates to push a non-electric wheelchair, contending it was unsafe and against regulations.

In Civil Action No. 10-11951-DJC, Attorney James Heggie, Esq. was appointed to represent Feijoo.  Again, Feijoo, while imprisoned at Bridgewater State Hospital, asserted challenges to his conditions of confinement, claiming that, *inter alia*, he was denied access to services and benefits available to non-disabled persons, including the ability socialize with inmates, the inability to use the gyn, the inability to purchase beverages containing caffeine.

Finally, in Civil Action No. 12-11453-GAO, Attorney Harold W. Potter, Jr. was appointed as *pro bono* counsel for Feijoo.  That action involved an allegation that the DOC defendants failed to comply with the terms of a May 16, 2000 Settlement Agreement between Feijoo and the DOC with respect to damages and repairs to his privately-owned electric wheelchair.

Given this litigation history and the fact that Feijoo's mobility is substantially impaired due to his medical conditions, this Court finds that there are exceptional circumstances presented warranting the appointment of *pro bono* counsel.

Accordingly, this Court will <u>GRANT</u> Feijoo's Motion for Appointment of *pro bono* counsel.  The matter will be referred to this Court's Pro Bono Coordinators to obtain counsel for Feijoo pursuant to this Court's Pro Bono Plan.  Within 30 days after *pro bono* counsel has been appointed, counsel shall file an "amended complaint" curing the Rule 8 pleading deficiencies of the original, and counsel shall request the issuance of summonses at that time.

E.   <u>The Motion to Waive Cost of Service by Sheriff or Marshal</u>

In light of the above, no summonses shall issue at this time.  Once appointed counsel files an amended complaint and requests the issuance of summonses, then the United States Marshal Service shall effect service as directed by the plaintiff, and shall advance the costs of service.  Notwithstanding Fed. R. Civ. P. 4(m) and Local Rule 4.1, the plaintiff shall have 120 days from the date of issuance of the summonses to complete service.

Accordingly, Feijoo's Motion to Waive Cost of Service by Sheriff or Marshal (Docket No. 3) will be <u>ALLOWED</u> to the extent that the United States Marshal Service shall effect service of

process <u>after</u> summonses issue, and as directed by plaintiff, with all costs of service to be advanced by the United States Marshal Service.

### III.  Conclusion

Based on the foregoing, it is hereby Ordered that:

1. Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) is <u>ALLOWED</u> and the filing fee is assessed pursuant to 28 U.S.C. § 1915(b);

2. Plaintiff's Motion for Appointment of *Pro Bono* Counsel (Docket No. 6) is <u>ALLOWED</u>; the Pro Bono Coordinators shall appoint counsel pursuant to the District Court's Pro Bono Plan;

3. Within 30 days of the date of appointment of *pro bono* counsel, appointed counsel shall file an amended complaint pursuant to Fed. R. Civ. P. 8 curing the pleading deficiencies in the original complaint, and appointed counsel shall request summonses to issue at that time;

4. Plaintiff's Motion to Waive Cost of Service by Sheriff or Marshal (Docket No. 3) is <u>ALLOWED</u> to the extent that the United States Marshal Service shall effect service of process <u>after</u> summonses issue, and as directed by plaintiff, with all costs of service to be advanced by the United States Marshal Service.

SO ORDERED.

                                          /s/ Patti B. Saris
                                          PATTI B. SARIS
                                          CHIEF, UNITED STATES DISTRICT JUDGE